UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| HAYMAKER DEVELOPMENT COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 20-478-DCR |
| V. | ) ) | |
| C.M. GATTON, et al., | ) ) | **MEMORANDUM ORDER AND OPINION** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Haymaker Development Company, LLC ("HDC") sued C.M. Gatton and the C.M. Gatton Trust ("the Gatton parties") because they refused to convey certain real property to HDC consistent with the parties' past dealings. On November 16, 2020, HDC filed a notice of lis pendens in the Fayette Circuit Court, giving the public formal notice of HDC's claim with respect to the disputed property. [Record Nos. 58-1, 86] The Gatton parties subsequently asserted a counterclaim alleging slander of title based on the notice of lis pendens. This Court granted summary judgment in favor of the Gatton parties with respect to HDC's claims on February 8, 2022, finding that HDC had no ownership interest in the subject property and that the Gatton parties had no obligation to convey the property to HDC. HDC released the lis pendens six days later. [Record No. 86-1]

A jury trial regarding the Gatton parties' slander of title claim is scheduled to begin October 24, 2022. The only issues that remain for a jury's consideration are whether HDC acted with malice in filing the notice of lis pendens and, if so, the amount of damages the

Gatton parties sustained as a result. The matter is currently pending for consideration of the parties' motions in limine and various evidentiary objections.

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). Courts should exclude evidence on a motion in limine only when the challenged evidence is clearly inadmissible. *Morningstar v. Circleville Fire & EMS Dep't*, No. 2: 15-cv-3077, 2018 WL 3721077, at *1 (S.D. Ohio Aug. 6, 2018). Motions in limine to exclude broad categories of evidence should rarely be granted. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The better practice is to confront questions of admissibility as they arise at trial. *Id.* The Court will turn to the parties' motions with these general principles in mind.

### I.    HDC's Motion to Limit Evidence of Damages

HDC contends that evidence of damages should be limited to the temporary diminution in value of the use and occupancy or loss of rental value of the disputed property for the 456-day period in which the lis pendens was in place. [Record No. 86] The Gatton parties argue that this motion constitutes an untimely motion to exclude or limit an expert opinion which was required to be filed by January 4, 2022. They also contend that such a limitation on damages constitutes an incorrect statement of the law.

The Gatton parties timely disclosed certified real estate appraiser Jeffrey Lagrew as an expert witness regarding the issue of damages. Lagrew evaluated three portions of the land subject to dispute and developed opinions regarding the property value with and without the lis pendens in place. [*See* Record No. 86, p. 2.] To determine the value of the property without

any legal encumbrance, Lagrew employed the "sales comparison approach" and concluded that the property was valued at $38,590,000. *Id.*

Lagrew explained in his report that a lis pendens "creates a cloud on the title and cannot be easily monetized." [Record No. 102-3, p. 1] However, estimating that the litigation would continue for three years and applying a discount rate of 12 percent, Lagrew determined that the property subject to the lis pendens was worth around $22 million less than it was prior to the lis pendens' filing.

HDC argues that, because the notice of lis pendens was released on February 14, 2022, the Gatton parties should only be permitted to recover for a temporary injury to the real property. According to HDC, "[a] temporary injury is not calculated by evaluating pre- and post-injury fair market value, but by what the Gatton parties, as title owners of the property, lost in the use and occupancy or rental value of the land during that time period." [Record No. 86, p. 3]

The Gatton parties correctly note that motions related to the admissibility of expert testimony were due on or before January 4, 2022. HDC maintains that its challenge does not constitute a motion to exclude under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993), because it does not challenge Lagrew's qualifications or methodology, and it does not seek to prevent him from testifying at trial. Instead, HDC reports that it "is concerned with Lagrew's conclusion that the injury would last for three years," when the lis pendens was recorded on the property for only 456 days. HDC contends, "[a]s a matter of law, this 456-day lis pendens notice cannot be a permanent injury." [Record No. 86, p. 6] Accordingly, it argues that damages should be limited as follows: the Gatton parties should be required to prove "the loss of a sale during the time the lis pendens was recorded" *or* by proving

"depreciation in the rental value of the land or the diminution in the value of the use of the land during the injury." *Id.* at pp. 6-7.

Slander of title is an action for injury to real property rights resulting from disparagement of title to real estate. *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 236 (Ky. 2013). In *Bonnie Braes Farm, Inc. v. Robinson*, the Court of Appeals of Kentucky clarified that, to be compensated for such an injury, a plaintiff must prove that he or she has suffered special damages as a result of slander of title. 598 S.W.2d 765, 766 (Ky. Ct. App. 1980). Special damages may consist of a loss of the sale of property or a diminution in the property's fair market value. *Id.*

Generally, "the measure of damages for injury to real property is the diminution in the market value of the land reflected in the difference in the fair market value immediately before and immediately after the injury in question." *Middle States Coal Co. v. Hicks*, 608 S.W.2d 56, 57 (Ky. Ct. App. 1980). HDC argues, essentially, that the injury ended when the lis pendens was removed on February 14, 2022. Accordingly, it contends that the Gatton parties have improperly characterized the injuries to their property as "permanent."

The Kentucky Supreme Court discussed the concepts of permanent and temporary injuries to real property in *Ellison v. R&B Contracting, Inc.*, 32 S.W. 3d 66, 70 (Ky. 2000). There, the plaintiff alleged that the defendant construction companies had trespassed on his property by storing and servicing heavy equipment and depositing debris on it. The court observed that injuries to real estate are "permanent" when the cost to restore the property to its original state exceeds the amount by which the injury decreased the property's value. Injuries are "temporary," on the other hand, when property may be restored at an expense less than the amount by which the injury decreased the property's value. *See also Worldwide Equip.*

*Enters., Inc. v. Broan-Nuton LLC*, 191 F. Supp. 3d 684, 688 (E.D. Ky. 2016) (explaining that an injury's characterization as permanent or temporary depends on the cost of restoration, not the type of harm) (citing *Ellison*, 32 S.W.3d at 69). This distinction has been applied to ensure that plaintiffs "recover the least amount of money necessary to make them whole." *Id.*

HDC does not explain how this analysis applies to the facts at hand but, instead, improperly focuses on what it contends was the relatively short-lived nature of the lis pendens. It is unsurprising that Kentucky courts have almost exclusively applied the permanent versus temporary distinction in cases of physical damage to property, as the issue of repairing or restoring property naturally comes into play when the property has sustained physical damage. *See e.g., Ellison,* 32 S.W.3d at 70 (observing that the Kentucky Supreme Court had upheld temporary and permanent damages *in cases such as Ellison*); *Toebbe v. City of Covington*, 141 S.W. 421 (Ky. 1911) (concluding that injury was temporary when sewer became stopped up and water flowed into plaintiff's cellar); *City of Pikeville v. Riddle*, 255 S.W. 63, 64 (Ky. 1923) (concluding that injury was temporary when work done by city diverted water flow onto Riddle's property).

HDC cites a single case in which a Kentucky court suggested that the plaintiff suffered temporary damages in a slander of title case. The parties in *Gibson v. Jones* owned adjoining property and disagreed over the location of the property line. 2021 WL 753312 (Ky. Ct. App. Feb. 26, 2021) (unpublished). Believing that Jones was preparing to auction off part of his property, Gibson drafted and filed a "deed of correction," that contained a property description different than that contained in the original deed to the property. When Jones was undeterred from selling the property, Gibson filed suit in the Pulaski Circuit Court.

Jones filed counterclaims against Gibson for slander of title, loss of quiet enjoyment, negligence, and nuisance. The trial court dismissed Gibson's claims and granted summary judgment in favor of Jones with respect to the counterclaims. It then held a hearing with respect to damages and determined that "Jones was damaged by Gibson's slander of title, negligence, and nuisance by loss of rental value of the lots from Gibson's commencement of the action until the holding of the damages hearing in an amount totaling $24,750.00." *Id.* at *5. The court also found that Jones had proven damages in that the planned auction had to be canceled and a party that had made a $20,000 offer to purchase the property withdrew it because of Gibson's actions, which clouded the title. Jones also recovered punitive damages "in attorney's fees and costs" in the amount of $14,904.02, for a total of $62,654.02.

The Court of Appeals of Kentucky acknowledged that, to prevail on a claim for slander of title, the plaintiff must establish special damages, which may include diminution in the fair market value of the property or the loss of proceeds of sale. *Id.* (citing *Bonnie Braes Farms, Inc.*, 598 S.W.2d 765). Without any meaningful explanation, it suggested that Jones was entitled to temporary damages, which would reasonably compensate him for the diminution in the value of the use and occupancy of his property. *Id.* at *6 (citing *Bishop v. Rueff*, 619 S.W.2d 718, 721 (Ky. Ct. App. 1981) (overruled on other grounds by *Oliver v. Schultz*, 885 S.W.2d 699 (Ky. 1994)). The court also tacitly approved the trial court's conclusion that Jones was entitled to the same damages under his theories of negligence, nuisance, and loss of quiet enjoyment. *Id.*

Despite its fleeting reference to "injuries of a temporary character," the court did not cite *Ellison* or otherwise discuss the cost of restoring Jones' property to its original state. It

also failed to explain why Jones was entitled to recover for the fair rental value of the property, costs associated with the canceling of an auction, *and* the loss of a sale.

The unpublished opinion in *Gibson* is not sufficiently persuasive to cause this Court to deviate from Kentucky's published authority regarding property damages, including *Hicks*, 608 S.W.2d at 57 and *Ellison*, 32 S.W. 3d at 70.  HDC has not demonstrated that this case presents an instance of "temporary damages" as that term has been applied under Kentucky law, so the motion to limit evidence of damages will be denied.[1]

Consistent with the prevailing rule in Kentucky, the finder of fact will be asked to compare the fair market value immediately before and immediately after the injury in question. *See Hicks,* 608 S.W.2d at 57.  How the "injury in question" should be defined raises a separate inquiry.  While Mr. Lagrew applied a three-year period, accounting for the anticipated length of litigation, the Gatton parties' slander of title claim refers exclusively to the lis pendens and does not make mention of HDC's lawsuit.  However, at the time Lagrew prepared his report, he had no way of knowing precisely when the lis pendens would be removed.  Accordingly, he was not necessarily unreasonable in applying a three-year litigation period in his analysis.  HDC will be free to cross-examine Lagrew on this subject and/or request any appropriate limiting jury instructions.

---

[1] HDC did not raise the issue of the Gatton parties' possible entitlement to attorney's fees in its motion in limine.  Nevertheless, the Gatton parties included in their response an argument entitled, "Gatton is also entitled to the reasonable attorney's fees and costs expended in this action."  [Record No. 102, p. 16]  In its reply, HDC indicates it is unsure why the Gatton parties included this argument in response to a motion related only to the "distinction between permanent and temporary injuries in the context of determining diminution in value."  [Record No. 103, p. 11]  Since the issue of attorney's fees is not properly before the Court and is not fully briefed, the undersigned will not address it here.

## II.     Gatton Parties' Omnibus Motion in Limine

The Gatton parties have filed an "omnibus motion in limine" raising several issues, which the Court will address in turn. [Record No. 87]

### A.     Evidence Regarding HDC's Partnership Claims

The Gatton parties seek to exclude evidence and testimony regarding HDC's partnership claims. In support, they assert that HDC's claims concerning the parties' alleged partnership have been dismissed and are irrelevant to the remaining slander of title claim. Specifically, the Gatton parties contend that HDC should not be permitted to present evidence of covenants and restrictions entered into between the parties with respect to the subject property, Tim Haymaker's limited powers of attorney with respect to the property, and proformas, roll-forward schedules, and other accounting documents.

HDC agrees that the issue of the existence of a partnership has been resolved in the Gatton parties' favor. However, HDC maintains that some evidence regarding the alleged partnership is highly relevant to the jury's determination of whether HDC acted with malice in filing the notice of lis pendens. In other words, HDC contends that evidence regarding the alleged partnership is relevant to what Haymaker believed concerning his rights and/ownership concerning the subject property and his state of mind when filing the notice of lis pendens.

The Gatton parties assert that evidence of the alleged partnership simply is not relevant. They rely on the fact that the Court previously concluded that, even if a partnership had existed, the subject property was not partnership property. Accordingly, the Gatton parties contend that "evidence related to Haymaker's prior development of land sold by Gatton to Haymaker is what would potentially be relevant to the malice issue—not evidence related to whether there was a basis to believe a partnership existed." [Record No. 87, p. 3]

The Gatton parties point to three particular categories of evidence they believe should be excluded at trial. First, they contend that HDC should not be permitted to introduce evidence of covenants and restrictions entered into between Gatton and Haymaker. Second, they argue that Tim Haymaker's limited powers of attorney with respect to the property are irrelevant. Finally, the Gatton parties assert that HDC should be precluded from introducing evidence concerning proformas, roll-forward schedules, and other accounting documents involving the property. While the Court previously concluded that these categories of evidence were insufficient to establish that HDC had any ownership interest in the property, that does not mean they are irrelevant to HDC's state of mind in filing the lis pendens.

Evidence is relevant when it has any tendency to make a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. And relevant evidence generally is admissible. Fed. R. Evid. 402. Existence of malice is a question for the jury, which may be inferred from the proof. *Hendrie v. Perkins*, 42 S.W.2d 502 (Ky. Ct. App. 1931). HDC seeks to present a "truncated" presentation of facts which Tim Haymaker contends led him to believe that the disputed property was held for the benefit of an alleged partnership and, therefore, HDC did not file the lis pendens in bad faith. The factual issues concerning HDC's prior development of land with the Gatton parties and the existence of an alleged partnership overlap to a significant degree. Accordingly, the Gatton parties' motion in limine to exclude evidence and testimony regarding HDC's partnership claims will be denied. However, HDC is cautioned that "partnership" evidence must be relevant to the slander of title claim and should not be unduly cumulative. To the extent the Gatton parties believe that any particular piece of

evidence should be excluded pursuant to Rule 403 or for any other reason, they may raise these objections individually at trial.[2]

### B. Evidence and Testimony Related to Advice of Counsel

The Gatton parties also contend that HDC should be precluded from introducing evidence indicating that it relied on the advice of counsel when filing the notice of lis pendens. HDC reports that it does not intend to present an advice of counsel defense. [Record No. 92, p. 4] Instead, it seeks to introduce a letter from HDC's counsel to C.M. Gatton, dated August 28, 2020. In the letter, counsel summarizes the history of the parties' relationship (as Timothy Haymaker had related to attorney John Brice) and asks Gatton to convey property to HDC to avoid litigation. [Record No. 87-1]

HDC reports that the letter does not constitute hearsay because it will not be offered to prove the truth of the matters asserted therein. Instead, it would be introduced to demonstrate HDC's state of mind shortly before filing the Complaint and notice of lis pendens. However, Timothy Haymaker is expected to testify at trial, and it is unclear why the letter is necessary (or would even be helpful) in shedding additional light on his state of mind prior to institution of this litigation or filing the notice of lis pendens. Based on the limited evidentiary value and the potential misuse by the jury as an "advice-of-counsel" defense, the letter will be excluded.

### C. Mitigation of Damages

The Gatton parties also contend that HDC should be precluded from offering any evidence suggesting that they failed to mitigate their damages. They specifically argue that

---

[2] The Court defers ruling on the Gatton parties' numerous individual objections to "partnership" evidence because it is unable to determine the relevance of the individual exhibits outside the context of trial. [*See* Record No. 89.]

failure to mitigate is an affirmative defense that is waived if it is not pleaded affirmatively. HDC disagrees, arguing that Kentucky law "would seem to indicate" that a mitigation-of-damages defense does not have to be pleaded affirmatively to avoid waiver. [Record No. 92, p. 7]

Rule 8(c) of the Federal Rules of Civil Procedure and Rule 12.02 of the Kentucky Rules of Civil Procedure require affirmative defenses to be raised in responsive pleadings. Generally, the failure to do so results in waiver of the defense and its exclusion from the case. *See Fugate v. Lowe's Home Ctrs., Inc.*, 2005 WL 8163333, at *1 (E.D. Ky. July 19, 2005) (citing *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)); *Farmers Crop Ins. v. Alliance, Inc. v. Gray*, 2010 WL 5018284, at *3 (Ky. Ct. App. Dec. 10, 2004) (citing *Commonwealth Dept. of Highways v. Chinn*, 350 S.W.2d 622, 623 (Ky. 1961)). While the Kentucky courts do not appear to have addressed the question directly, they have assumed, without discussion, that failure to mitigate damages is an affirmative defense. *See Holbrook v. Dollar General Store Corp.*, 2014 WL 4049891 (Ky. Ct. App. Aug. 15, 2014); *Flick v. Lambirth*, 2010 WL 4740292, (Ky. Ct. App. Nov. 24, 2010); *Fresh Mex, LLC v. Thomas & King, Inc.*, 2009 WL 102883, at *1 (Ky. Ct. App. Jan. 16, 2009) (in each case, the Kentucky Court of Appeals observed that the defendants raised affirmative defenses, including failure to mitigate damages).

Additionally, most federal courts have determined that failure to mitigate damages constitutes an affirmative defense under Rule 8(c)'s catch-all clause, which requires a party to affirmatively plead "any other matter constituting an avoidance or affirmative defense." *See Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1286 (11th Cir. 2000) (collecting cases). Accordingly, the Gatton parties' motion to exclude evidence of failure to mitigate damages will be granted.

### D. Newspaper Articles and other Items Not Produced During Discovery

HDC seeks to introduce various newspaper articles from 1994, 1995, 1996, 2003, 2004, and 2016, concerning the development of the subject property. [*See* Record No. 87-7.] The Gatton parties argue that the articles are irrelevant and constitute inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Anthony v. DeWitt*, 295 F.3d 554, 563 (6th Cir. 2002) (citing Fed. R. Evid. 801(c)). *See also Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 744 n.10 (W.D. Ky. 2019) ("Newspaper articles are typically considered hearsay under Rule 801(c) when offered for the truth of the matter asserted.") (quoting *Parker v. Winwood*, 2017 WL 6886076, at *9 (M.D. Tenn. Oct. 17, 2017) (collecting cases)).

While some of the articles include references to Haymaker and Gatton as "partners" or "financial partners," HDC contends that the articles will not be offered to prove that HDC and the Gatton parties were partners who developed property held for the benefit of a partnership. [*See* Record No. 87-7, pp. 2, 16] Instead, it asserts that the articles will be offered "only to assist the factfinder in understanding HDC's motive in bringing this action and filing the notice of lis pendens . . ." [Record No. 92, pp. 7-8]

HDC does not explain how the tendered newspaper articles are relevant to HDC's motive. Timothy Haymaker is expected to testify at trial and, therefore, may explain his relationship with Gatton and the development of the subject property, to the extent this information is relevant. It is unclear what evidentiary value the newspaper articles add with respect to HDC's motive for filing the lawsuit and lis pendens.

The Gatton parties also argue that HDC should be precluded from introducing the articles at trial because they were not produced during discovery. Likewise, they contend that HDC's exhibits identified as Exhibits 12, 13, 23, 50, 65, 71, 75, 78, 79, 84, 85, 86, 87, 88, 89, and 90 should be excluded because they were not disclosed during discovery.[3] HDC responds that it was not required to produce any of these items in discovery because they were publicly available. While the Sixth Circuit does not appear to have addressed this issue explicitly, the United States District Court for the District of Columbia astutely observed that "[t]he Federal Rules do not shield publicly available documents from discovery merely because of their accessibility." *Shatsky v. Syrian Arab Republic*, 312 FRD 219, 223-24 (D.D.C. 2015). In other words, litigants are not required to "scour the public domain for nuggets of information that their adversaries could potentially use against them—a task that is as Herculean as it is nonsensical." *Id.* at 224.

The Gatton parties contend that, in their March 2021 requests for production, they asked HDC to produce, *inter alia*, "all documents, communications, and tangible things that you intend to introduce as an exhibit or otherwise make reference to at any trial, hearing, or

---

[3] Exhibits 12, 13, 23, and 50 are various deeds; Exhibit 65 is the "original Madden proforma, dated September 23, 2002;" Exhibit 71 is the Tuscany Plat; Exhibit 75 is a compilation of newspaper articles; Exhibit 78 is a Coventry map, dated March 2020; Exhibit 79 is a Coventry preliminary development plat; Exhibit 84 is a Tuscany map dated April 2020; Exhibit 85 is a Tuscany preliminary development plat; Exhibit 86 is a Tuscany Unit 11 certified preliminary subdivision plan; Exhibit 87 is a Tuscany Unit 11, Phase 2 certified preliminary subdivision plan; Exhibit 88 is a Tuscany Unit 12 certified preliminary subdivision plan; Exhibit 89 is a Tuscany Unit 14 certified preliminary subdivision plan; and Exhibit 15 is a Tuscany Unit 15 certified preliminary subdivision plan.

According to the Gatton parties, there are other proposed exhibits that HDC failed to disclose, but the Gatton parties do not object to them because the documents appear to have been signed by C.M. Gatton. [Record No. 87, p. 14]

deposition in this matter." HDC reported that no final decision had been made with respect to trial exhibits, but that HDC would supplement its response in accordance with the Court's orders. *See also* Fed. R. Civ. P. 26(a)(1)(A)(ii); 26(e) (explaining requirements of supplementation).

The exhibits at issue were never disclosed, let alone by the deadline set forth in the Court's Scheduling Order. [*See* Record No. 16.] If a party fails to timely supplement its discovery responses, Rule 37(c)(1) mandates exclusion of the undisclosed information "unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2003). HDC does not provide any justification for its failure to disclose the documents other than to say that they were publicly available. Nor does HDC explain how its failure to disclose these results in no harm to the Gatton parties. Accordingly, the undisclosed exhibits will be excluded.

### E. Hostile Witnesses

Finally, the Gatton parties seek to deem HDC members, officers, and employees hostile witnesses pursuant to Rule 611 of the Federal Rules of Evidence. Normally, leading questions are not permitted on direct examination, but Rule 611 allows leading questions when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. HDC apparently does not object to treating such witnesses as hostile upon the Gatton parties' direct examination, as HDC failed to respond to this portion of the Gatton parties' motion in limine. Accordingly, this portion of the Gatton parties' motion in limine will be granted.

**III.     The Gatton Parties' Motion to Exclude Benjamin Baker and Appraisal Reports**

Benjamin Baker is a Kentucky certified general appraiser, who appraised various tracts of land prior to Haymaker purchasing them from Gatton in 2015, 2016, 2017, and 2020. The Gatton parties have filed a motion to exclude Baker's testimony and the appraisal reports he prepared. [Record No. 88] HDC indicated for the first time in its witness list filed with the Court on March 7, 2022, that it intends for Baker to testify concerning the appraisal reports.

In response to the Gatton parties' motion to exclude Baker and the appraisal reports, HDC contends that Baker is not an expert witness. However, HDC asserts that the Gatton parties' expert witness, Jeffrey Lagrew, reviewed Baker's appraisal reports in forming his opinion. Accordingly, HDC argues, Baker "may be needed to rebut Mr. Lagrew's testimony regarding Mr. Baker's appraisals." Moreover, it contends, the Gatton parties "should have been aware that Mr. Baker might be called to testify," given that the Gatton parties had obtained Baker's appraisal reports via discovery and provided them to Lagrew.

Lagrew testified in his deposition that he did not rely on Baker's appraisals in forming his opinions in this case. [*See* Record No. 100, p. 2.] Further, the Gatton parties report that Lagrew will not testify with respect to Baker's appraisals at trial. *Id.* The Gatton parties' assurance that Lagrew will not testify about Baker's appraisals obviates any potential need for Baker's rebuttal testimony.

HDC did not disclose Baker as an expert witness and concedes that he is not intended to testify as an expert. He could not, since he was not disclosed pursuant to Rule 26(a)(2). HDC cannot rely on him as a lay witness because his testimony as a non-expert is excluded under Rule 37(c)(1) based on HDC's failure to disclose him as a person with knowledge under Rule 26(a). *See Info-Hold, Inc. v. Muzak LLC*, 2013 WL 6008619 (S.D. Ohio Nov. 13, 2013).

HDC's proposed Exhibits 27, 38, 40, 46, and 62 represent Baker's appraisal reports. The Gatton parties object to the introduction of these reports on several grounds, including the assertion that they constitute inadmissible hearsay.[4] It appears that HDC's only method of introducing the reports is through Baker, who will not be permitted to testify. Accordingly, the Gatton parties' motion to exclude the testimony of Benjamin Baker and the appraisal reports authored by him will be granted.

### IV.   Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.  HDC's motion in limine to limit the Gatton parties' evidence of damages [Record No. 86] is **DENIED**.

2.  The Gatton parties' omnibus motion in limine [Record No. 87] is **DENIED**, in part, and **GRANTED**, in part.

3.  The Gatton parties' motion to exclude Benjamin Baker as a witness during trial [Record No. 88] is **GRANTED**.

---

[4] HDC contends that the Gatton parties' hearsay objection is "clearly abated" by the fact that HDC intends to call Baker to testify at trial. HDC goes on to misstate the definition of hearsay as "a statement other than one made by the declarant, offered to prove the truth of the matter asserted." [Record No. 92, pp. 9-10] Of course, the correct definition is "a statement, other than one made by the declarant *while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted." *United States v. Napier*, 787 F.3d 333, 348 (6th Cir. 2015) (emphasis added). Since the appraisal reports ostensibly are statements Baker made outside of trial that would be offered to prove the truth of the matters asserted therein, they constitute hearsay.

Dated: April 27, 2022.

                                       <u>Danny C. Reeves, Chief Judge</u>
                                       United States District Court
                                       Eastern District of Kentucky