UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| HAYMAKER DEVELOPMENT COMPANY, LLC, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 5: 20-478-DCR |
| V. ) ) | |
| C.M. GATTON, et al., ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A jury trial is scheduled to begin on October 24, 2022, with respect to limited issues raised within C.M. Gatton and the C.M. Gatton Trust's ("the Gatton parties") counterclaim for slander of title. Specifically, a jury will be asked to determine whether Haymaker Development Company, LLC ("HDC") acted with malice in filing a notice of lis pendens regarding the Gatton parties' real property and, if so, what damages the Gatton parties sustained as a result. The Gatton parties have filed numerous objections to HDC's proposed trial exhibits. [Record No. 89] The objections have been resolved partially based on the Court's rulings on the Gatton parties' motions in limine.[1] [*See* Record No. 105.] This Memorandum Opinion and Order supplements those rulings to the extent objections remain outstanding.

---

[1] The Court determined previously that HDC Exhibits 27, 38, 40, 46, 62 (appraisal reports authored by Benjamin Baker), and 63 (letter from John Brice to C.M. Gatton) will be excluded.

- 1 -

Additionally, the Gatton parties intend to present at trial the video deposition testimony of C.M. Gatton.[2] The Gatton parties have designated portions of the deposition they intend to present to the jury and HDC has counter-designated portions it intends to present. [Record Nos. 80, 96] The Gatton parties have tendered various objections to HDC's counter-designations, to which HDC has responded. [Record Nos. 101, 104] The Court provides rulings on those objections herein.

## I. HDC's Exhibits

The Gatton parties contend that various proposed exhibits should be excluded because HDC failed to produce them during discovery.[3] To the extent HDC concedes that these exhibits were not produced, they may not be introduced into evidence. The Court previously explained that a document's availability as a public record does not excuse a litigant's obligation to disclose it to an opponent in discovery. [*See* Record No. 105, p. 13 (citing *Shatsky v. Syrian Arab Republic*, 312 F.R.D. 219, 223-24 (D.D.C. 2015)].

In response to the Gatton parties' evidentiary objections, HDC argues that certain unproduced items will merely be used as "demonstrative exhibits." [Record No. 93] These consist of various plats, a map, and a subdivision plan.[4] The Gatton parties assert that, as demonstrative aids, these items may not be admitted as substantive evidence and should not

---

[2] HDC initially objected to the use of Mr. Gatton's deposition in lieu of live testimony, but later withdrew the objection. C.M. Gatton subsequently passed away on April 18, 2022. Thus, the parties may use his deposition for any purpose. See Fed. R. Civ. P. 32(a)(4)(A).

[3] These include HDC Exhibits 12, 13, 23, 50, 65, 71, 75, 78, 79, 84, 85, 86, 87, 88, 89, and 90.

[4] HDC identifies the following Exhibits as demonstrative: 71, 79, 84, 85, 86, 87, 88, 89, and 90.

be allowed in the jury room during deliberations.  Further, the Gatton parties contend that a limiting instruction should be given explaining that the items are for demonstrative purposes only and should not be considered as substantive evidence.

Trial courts have discretionary authority to permit counsel to employ illustrative aids or pedagogical devices.  This includes "information presented on a chalkboard, flip chart, or drawing, and the like, that (1) is used to summarize or illustrate evidence, such as documents, recordings, or trial testimony, that has been admitted in evidence; (2) is itself not admitted into evidence; and (3) may reflect, to some extent, through captions or other organizations devices or descriptions, the inferences and conclusions drawn from the underlying evidence drawn by the summary's proponent." *United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998) (citing Fed. R. Evid. 611(a)).  But such evidence is subject to exclusion under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. The Gatton parties have preserved their right to object to these illustrative exhibits at trial based on Rule 403.

The Court previously determined that the Gatton parties had no obligation to convey property to HDC and that the Gatton parties' property belonged solely to the Gatton parties and not a partnership involving HDC. [Record No. 69]  HDC now seeks to introduce evidence suggesting it reasonably believed otherwise, giving it a good faith basis for filing the notice of lis pendens.[5]

---

5   HDC applies this rationale with respect to Exhibits 1, 2, 6, 7, 12, 13, 15, 19, 22, 23, 24, 25, 28, 31, 33, 35, 36, 41, 44, 45, 48, 51, 53, 56, 58, 65, 69, 73, 74, 75, and 83.

The disputed evidence can be separated into a few major categories.  Exhibit 7 is a Declaration of Covenants, Conditions and Restrictions for Tuscany/East Pointe Residential Community, entered into by C.M. Gatton, as Trustee, and HDC on June 27, 2005.  The Declaration imposes certain conditions and restrictions on parcels of property owned by Gatton and Haymaker within the residential community.  The stated purpose is to "impose upon the Properties mutually beneficial restrictions under a general plan of improvement for the benefit of all owners of residential property within the Properties, to provide a flexible and reasonable procedure for the overall development of the Properties, and to establish a method for the administration, maintenance, preservation, use and enjoyment of the Properties. . . ."  Exhibits 22, 33, 41, and 45 are Amendments to the Declaration of Covenants, Conditions, and Restrictions.

HDC's proposed Exhibit 6 is a Limited Power of Attorney under which C.M. Gatton, as Trustee of the C.M. Gatton Trust, gave Timothy Haymaker authority to make, execute, and deliver contracts, correspondence, applications, development plans, subdivision plats, checks, and other documents that were "required to be signed by [Gatton] as owner, in connection with HDC's development of the Coventry and Tuscany developments."  The power of attorney expressly did not authorize Haymaker to execute any contracts and/or deeds for the conveyance of any interest in property of the Trust or to execute any checks or contracts to Haymaker or his affiliated entities.

HDC also seeks to introduce various emails exchanged between the Gatton parties' accountant, Danny Dunn, and HDC's accountant, Carol Moses.  These emails range in time from 2012 to 2020 and discuss various business dealings concerning the development of

Coventry, Tuscany, and other real estate projects.[6]  Exhibits 24, 31, 51, 65, 69, and 73 are proformas for various real estate projects involving the Gatton parties and HDC.  The proformas include information such as estimated revenues, expenses, and profits, including the expected profit split between Gatton and Haymaker.  Exhibit 83 is a spreadsheet described as "the current rollforward schedule."

HDC has offered no basis for the introduction of any of this evidence other than to say that it is relevant to the parties' long-term relationship and therefore formed the basis of HDC's good faith basis for filing the notice of lis pendens.  While much of the evidence appears to have limited probative value, HDC must be allowed to present some evidence of the parties' historic relationship—otherwise it would be deprived of presenting a defense to the slander of title claim.  HDC will not be permitted to present every morsel of evidence in an attempt to retry its now-dismissed claims, but it will be allowed to present a truncated version of its underlying case, as long as the evidence has some relevance to the limited issues at trial.  While the Court will not exclude any of the aforementioned evidence at this juncture, it cautions that the parties' time for presentation of evidence will be appropriately limited.  Accordingly, HDC will be required to make strategic decisions concerning which pieces of evidence it wishes to introduce within the time allotted.

HDC also seeks to introduce documents concerning the parties' historic dealings with respect to the Beaumont and Citation Park Developments, which are not at issue in this case.[7]

---

[6]     These include Exhibits 15, 19, 24, 28, 36, 48, 53, 56, 58, and 74.

[7]     Exhibits 1 and 2 are powers of attorney involving the Beaumont Development.  Exhibit 35 is a Declaration of Covenants, Conditions, Restrictions, Reciprocal Rights, and Easements for Citation Business Park, dated May 6, 2015.

It is unclear how these documents could impact HDC's state of mind in filing a notice of lis pendens on an unrelated property. Accordingly, the Gatton parties' objections to Exhibits 1, 2, and 35 will be sustained.

HDC also has included "all pleadings and discovery responses" as Exhibit 91. The Gatton parties assert that documents authored by HDC's counsel constitute inadmissible hearsay if offered by HDC. However, it is unclear that HDC would attempt to introduce its own out-of-court statements into evidence. In response to the Gatton parties' objection, HDC cites Federal Rule of Evidence 801(d)(2), which lists circumstances in which an opposing party's out-of-court statement is admissible. Interrogatory responses are admissible as admissions of a party opponent under Rule 801(d) but, as this Court's sister court in the Western District of Kentucky has properly observed, specific decisions on admissibility of such evidence are best made at trial at the time of attempted introduction. *Higgs v. Transp. Specialist Sanford*, 2009 FL 1939026, *1 (W.D. Ky. July 6, 2009). Accordingly, this objection is overruled.

## II.   C.M. Gatton's Deposition

The Court's rulings on the Gatton parties' objections to HDC's counter-designations of C.M. Gatton's deposition testimony are as follows:

(1)   5: 11-8: 5. The Gatton parties object to introduction of Gatton's testimony regarding his childhood on the basis that it is irrelevant to any matter at issue. However, this testimony is brief and constitutes background information that may give the jury a better understanding of Gatton's credibility. This objection is overruled.

(2)   12: 22-14: 15. Gatton explained that he was looking for property to establish a Hyundai dealership. He purchased property, but decided not to establish the dealership. It

- 6 -

appears that Gatton became confused about the question and started talking about a piece of property he invested in when he was a child. The testimony is relevant with respect to Gatton's background as an investor and also may allow the jury to assess his credibility. Accordingly, the objection is overruled.

(3)   15: 6-18: 6. Gatton discussed Tim Haymaker serving as a broker during some sales of the Beaumont property and Gatton later selling some of the property to Haymaker, who developed it. The Gatton parties contend that this portion of the testimony should be excluded based on relevance. While the Gatton parties concede that some evidence concerning the Beaumont Development is relevant as background information, they contend that the level of detail in this testimony is not relevant. However, the identified portion of testimony is not particularly detailed and helps provide background information concerning the beginning of the parties' business relationship. Accordingly, this objection is overruled.

(4)   18:7-21. Gatton testified that he gave Tim Haymaker a limited power of attorney with respect to unspecified developments, but never gave him a general power of attorney and that Haymaker was never allowed to sell anything. The Gatton parties seek to exclude this portion of testimony based on the assertion that it is irrelevant and is likely to confuse the issues. However, Haymaker's limited power of attorney is arguably relevant to HDC's alleged good faith basis for filing a notice of lis pendens. Any confusion may be eliminated or reduced with limiting jury instructions, if requested. This objection is overruled.

(5)   19: 23-20:19. Gatton explained how he knew Carol Shaver Moses' family when he was a child. The Gatton parties have moved to exclude this portion of the testimony as irrelevant. However, this is relevant background information and helps provide context for Moses' role in the parties' business relationship. This objection is overruled.

- 7 -

(6) 23: 12-23. Gatton explained that Tim Haymaker's office was located on Wall Street on property purchased from Gatton and that Haymaker became partners with the engineers with whom he worked. The Gatton parties object on the grounds of relevance. However, this objection will be overruled, as this portion of testimony is very brief and provides continuity, as it is found in the middle of two portions of testimony HDC designated to which the Gatton parties did not object.

(7) 24: 12-22. In this portion of the testimony, Gatton was asked whether both he and Dunn would review the purchase price for parcels of the Gatton parties' property that was to be sold. Gatton stated, "At that point, Danny might not have been in on it, were you Danny?" Attorneys for both sides advised Gatton that Dunn, who was present in the room, was not permitted to answer. The Gatton parties object on relevance grounds, as this testimony largely consists of instructions to the witness about answering questions and has no probative value. The Court agrees that the colloquy concerning instructions to the witness is irrelevant and will be excluded. However, Gatton's statement, "At that point, Danny might not have been in on it, were you Danny?" provides continuity for the testimony preceding and following it, and may be admitted. Accordingly, this objection is sustained, in part, and overruled, in part.

(8) 29: 14-31: 2. Gatton was questioned about the rollforward schedule in this portion of testimony. The Gatton parties object based on relevance and confusing the issues, as it is relates only to Haymaker's dismissed partnership claim. However, the testimony is relatively brief and relates to HDC's defense that it did not act with malice in filing the notice of lis pendens. The objection is overruled.

(9) 33: 11-18. This portion of the deposition consists of counsel instructing Gatton that Dunn is not permitted to answer questions. These instructions by counsel are not relevant and the objection is sustained.

(10) 33: 19-34: 16. This testimony concerns the parties' mutual covenants and restrictions for the Tuscany subdivision. The testimony is relatively brief and is potentially relevant to HDC's claim that it reasonably believed it had a legal interest on the Gatton parties' property. Accordingly, this objection is overruled.

(11) 34: 17-37: 23. This testimony concerns the limited powers of attorney Gatton granted to Tim Haymaker. Similar to the testimony concerning covenants and restrictions, it is relatively brief and potentially is relevant to HDC's claim that it reasonably believed it had a legal interest in the Gatton parties' property. This objection is overruled.

(12) 37: 24-41: 5. Gatton testified regarding possible future plans for the Hamburg property. He stated that he had not been looking for buyers because of the cloud on the property caused by HDC's lawsuit. The Gatton parties contend that Gatton's testimony is irrelevant to the issues of malice and whether HDC devalued the property through its filing of the lis pendens. However, the testimony may be relevant to the issue of damages since Gatton discussed possible future uses for the property. This objection is overruled.

(13) 41: 24-42:5. Gatton testified that he decided to stop selling land to Tim Haymaker because he did not think he could trust him. HDC's counsel followed up by asking: "Did he ever do anything dishonest that you know of?" Gatton responded: "I wouldn't say he did, but he was slicker than the minnows in my daddy's creek that used to have minnows in it back when I was a teenager. And he would always have a story. Either he wouldn't pay me or whatever."

The Gatton parties object to this as improper character evidence under Federal Rule of Evidence 404(a)(1). Specifically, it appears that HDC seeks to introduce Gatton's statement that Tim Haymaker did not "do anything dishonest" to establish that HDC did not act with malice in filing the notice of lis pendens. Character evidence generally is not admissible to prove that a person acted in accordance with a particular character trait. Fed. R. Evid. 404(a)(1). HDC contends that Gatton's statements should be admitted regardless because the jury is entitled to know the basis of his mistrust. However, Gatton explains the basis of his mistrust in admissible portions of testimony that are not the subject of objections.[8] [41: 9-16] Accordingly, this objection is sustained.

(14) 76: 22-25. Counsel advised Gatton not to interrupt and explained that they could not talk on top of each other. The Gatton parties' objection will be sustained as this portion of the deposition has no probative value.

(15) 86: 20-87: 3. Gatton testified that he never had a partnership with Tim Haymaker, except on the Beaumont Shoppes. The Gatton parties contend this testimony is irrelevant and tends to confuse the issues. However, it is relevant background information and the jury is capable of understanding the difference between the Beaumont Shoppes and the properties at issue. This objection is overruled.

(16) 100: 8-101: 2. Gatton testified that Tim Haymaker did not work on an unrelated project in Murfreesboro, Tennessee but, instead, simply drove down and looked at the property as a friend. HDC has explained that this portion of testimony is relevant to Gatton's credibility

---

[8] Gatton testified: "He was always threatening me if I didn't sell him the next piece, and I didn't want to and been wanting to get out of doing business with him for 20 years, period, maybe 30. But every time I would do something to try to get out of it, he'd threaten me if I didn't do this or that, he was going to do something else, not pay me that money he owed me or something else."

because it disputes Gatton's claims of Haymaker's ingratitude.  Further, Tim Haymaker is expected to testify at trial that he had significant involvement in the Murfreesboro project. Accordingly, this objection is overruled.

Finally, the Gatton parties have requested to alter the order in which the deposition is played so that the video begins with a brief portion of testimony in which Gatton states his name and provides background information about himself.[9]  HDC has no objection to this request but believes a better approach would be to play all of the testimony under Gatton's counsel's questioning and then all of the testimony under HDC's counsel's questioning. However, the Court has reviewed the designations and counter-designations and believes a jury would be better served by hearing the deposition in the order it occurred, save the brief alteration so that the witness is able to introduce himself at the beginning of his testimony. Accordingly, the Gatton parties' request to play this portion of the deposition out of order is granted.

### III.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The Gatton parties' objections to HDC's trial exhibits are **SUSTAINED**, in part, and **OVERRULED**, in part.

2. The Gatton parties' objections to HDC's counter-designations of the deposition testimony of C.M. Gatton are **SUSTAINED**, in part, and **OVERRULED**, in part.

---

[9]   Specifically, the Gatton parties seek to play the following designations at the beginning of the presentation of the deposition: 44: 20-46: 12; 46: 22-50: 18; 52: 17-20; and 54: 16-55: 4.

Dated: May 16, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky